James M. Piotrowski
PIOTROWSKI DURAND, PLLC
P.O. Box 2864
1020 W. Main Street, Suite 440
Boise, Idaho 83701
Phone: (208) 331-9200
Fax: (208) 331-9201
Email: James@idunionlaw.com

Attorneys for Plaintiff Pat Whitcomb

BEFORE THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PATRICK WHITCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:19-cv-392 |
| | ) | |
| v. | ) | |
| | ) | COMPLAINT FOR VIOLATIONS OF |
| NORTH IDAHO COLLEGE, | ) | CIVIL AND STATUTORY RIGHTS |
| | ) | AND FOR WRONGFUL DISCHARGE |
| Defendant. | ) | (DEMAND FOR JURY) |
| | ) | |
| | ) | |

COMES NOW the Plaintiff, by and through counsel, and for his Complaint would show as follows:

## I.      INTRODUCTORY STATEMENT

1.      For over twenty years Coach Patrick Whitcomb led the North Idaho College (NIC) Cardinals wrestling team to a series of regional and national victories.  Coach Whitcomb's efforts continued the legacy he had started as a student-athlete at NIC where he was a two-time national champion wrestler in the 1980s.  In addition to leading the Cardinals wrestlers to 4 team national championships and 18 individual national championships, 108 of NIC's wrestlers have been named All-Americans during Whitcomb's tenure.  In 2018, NIC was ranked the #4

wrestling team in the National Junior College Athletic Association. Coach Whitcomb's pride in his students, school and program was not based primarily on their successes in competition, but on the education his athletes and all other NIC students received both on and off the mat. As part of that effort, in 2016 Coach Whitcomb began to raise concerns that NIC was violating state and federal laws (the Americans with Disabilities Act, Rehabilitation Act and Idaho Human Rights Act) by failing to ensure that the NIC Wrestling program was fully accessible to students with disabilities. Once NIC had concluded that making the wrestling program accessible would be too expensive (at approximately half the cost of an administrator's annual compensation), the institution expected Coach Whitcomb to stop discussing the matter. Coach Whitcomb refused to do so, continuing to serve as an advocate for the legal rights of the students whose welfare had been entrusted to him. As a result, NIC in 2017 and 2018 fabricated a one-sided, illegitimate, subjective "investigation" of alleged "academic integrity" violations. When that investigation revealed that a different coach had actually engaged in the violations that NIC was trying to pin on Whitcomb, the college proceeded anyway, and fired Whitcomb on pretextual, made-up bases, even as it protected the employment of the guilty coach who led NIC into a series of embarrassing collegiate athletic rule violations. In early 2019, Coach Whitcomb was fired because of his efforts to bring to light and correct NIC's repeated and flagrant violations of law. He brings this suit to address and correct NIC's violations of the federal Rehabilitation Act and the Idaho Whistleblower Protection Act, and in the hope that it may lead NIC to re-evaluate its compliance with well-established laws.

## II. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Patrick Whitcomb is an individual resident of the State of Idaho who, at the time of the key events set out in this Complaint was the Wrestling Coach at North Idaho College.

2.      North Idaho College ("NIC") is an educational institution located in Coeur d'Alene, Idaho.  NIC is part of a Junior College District, is a public institution and, per the laws of the State of Idaho, may sue and be sued in its own name.  NIC receives federal funding for a number of its programs.

3.      Suit is brought pursuant to 42 U.S.C. §1983, and the Rehabilitation Act.  At an appropriate time, Plaintiff intends to amend his complaint to assert claims arising under the Americans with Disabilities Act and the Civil Rights Act of 1965. This Court has jurisdiction over such claims pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over claims asserted here and arising under Idaho law, including, without limitation, claims under the Idaho Protection of Public Employees Act and for common law torts. The events and omissions giving rise to the action occurred entirely within the State of Idaho, and venue is thus appropriate in this District.

## III. FACTS GIVING RISE TO THE COMPLAINT

4.      During his tenure at NIC, from the fall of 1997 until February, 2019, Pat Whitcomb was among the most successful coaches, in any sport, in the history of North Idaho College.  Wrestlers coached by Mr. Whitcomb won multiple titles including several National Junior College Championships.  The wrestling program's successes were not only measured on the mat or in competition with other wrestlers.  Coach Whitcomb and the program he managed spread knowledge and skills in wrestling to local and regional high school athletes; performed

countless acts of public and charitable service; encouraged and inspired booster and alumni

organizations to donate extensively to the college; provided access to higher education for

countless students who would otherwise have been unable to afford college; and, served as

unofficial ambassadors and representatives showing the community and the entire Pacific

Northwest the best side of NIC and its students.

5.      NIC, like nearly every institution of higher learning, affirmatively pursues the

benefits and goals of diversity among its student body.  The most recent NIC Strategic Plan,

adopted in 2018 continues to identify "Diversity" as one of five primary goals of the institution.

As part of his duties, Coach Whitcomb learned about and, in 2016, recruited an out of state

wrestler who fit none of the typical stereotypes for collegiate wrestling.  The student, identified

herein as WW to protect his privacy, was a double amputee having lost both of his legs as a

child.  Overcoming his disability, WW was a state champion high school wrestler and Coach

Whitcomb knew that recruiting him was a significant coup for NIC athletically, in addition to

helping the school achieve its primary missions of educating students less likely to access

traditional higher education and achieving diversity in its student body to enhance the

educational experience for all students.

6.      In order to attend NIC, WW required accommodations to address mobility issues

due to the loss of his legs.  By email dated May 6, 2016, Whitcomb specifically requested that

NIC address the student's mobility challenges by either making the wrestling team's workout

space accessible (such as by adding a lift or elevator) or moving the wrestling team to an

accessible space.   These were not merely Whitcomb's requests.  He was aware at the time that

the Americans with Disabilities Act and the Rehabilitation Act both required that students with

disabilities be accommodated so that they could take full advantage of the educational opportunities offered by NIC, including the opportunity to be a student athlete.

7.     NIC's Athletic Director Al Williams denied every request by Whitcomb to move the wrestling team's practice area to an accessible space.  Instead, Williams offered to let the wrestling team create a workout and practice space each day by moving its mats and other equipment from the gym space it occupied at the time (at the top of a set of stairs) to an available first floor space.  Such accommodation would only be provided if the wrestling team would also disassemble its practice space and move its equipment back up the stairs at the end of every practice.  In short, Athletic Director Williams would not agree to provide any accommodation, but would only allow the wrestlers to spend additional hours every practice day moving equipment.  Student athlete WW, of course, would be unable even to assist his teammates since he would be incapable of moving mats and workout equipment up and down stairs.  The result of the only accommodation offered would have further isolated, segregated and embarrassed student WW on the basis of his disability.

8.     Other NIC administrators at least took the request for accommodation more seriously than did Athletic Director Williams.  An estimate for installation of a simple lift to allow access to the wrestling team's workout area was solicited, but the effort to provide legally required accommodations got no further than obtaining the estimate.  Coach Whitcomb continued to insist throughout the spring, summer and fall of 2016 that accommodations for student WW were required by law and could be easily accomplished as NIC was in the midst of building new athletic facilities and had recently completed or vacated facilities which would accommodate the wrestling team either on a ground level floor, or in a facility with an elevator.

9.      Athletic Director Williams was displeased by Whitcomb's insistence.  At one point, Williams falsely claimed that student WW could easily access the wrestling team's practice facility.  This was demonstrably false.  Access to the practice facility required climbing a set of stairs, which WW could not navigate on his own due to his disability except by crawling up the stairs using his hands and the stubs of his amputated legs.  As the 2017-2018 wrestling season began, student WW faced the absurd choice of either crawling up the stairs on his hands or being carried up them by his teammates.  Coach Whitcomb was not sure which option was more demeaning to the student.  The student had no other option since his attendance at NIC was made possible by a scholarship which required him to participate as a member of the wrestling team.

10.     Despite the indifference to legal compliance exhibited by the Athletic Director and the administration of NIC, Coach Whitcomb continued to advocate, through emails and personal conversations for appropriate accommodations for WW and all other students with disabilities.

11.     During his years as a Coach at NIC, Whitcomb was actively involved in growing a successful athletic booster club consisting of alumni and other interested parties.  The NIC Booster Club included supporters of multiple sports and raised money for a variety of efforts intended to support the educational mission of NIC and, particularly, the educational values attained through college athletics.  Coach Whitcomb's wrestling program provided major financial support for the booster club by running an annual raffle and a high school wrestling tournament which drew high school wrestling teams from throughout the region.  In response to Coach Whitcomb's continued efforts to require the NIC Athletic Department to comply with its obligations to students with disabilities, Athletic Director Al Williams, with the knowledge and

support of other NIC Administrators, decided to turn Coach Whitcomb's charitable and booster activities against him.

12.     On or about January 30, 2017, Athletic Director Williams presented Coach Whitcomb a "Corrective Action Form."  The Corrective Action Form accused Coach Whitcomb of violating bookkeeping requirements associated with booster funds and charitable efforts. Nearly every allegation against Whitcomb in the Corrective Action Form was either provably false or reprimanded Whitcomb for conduct which had been expressly permitted by, and in some cases participated in, by Athletic Director Williams, or was the result of questionable decisions made by Williams such as utilizing a bookkeeper for the NIC Booster Club that was based in Arizona.

13.     For a number of years NIC Wrestlers had raised funds for a program called "We Care."  The purpose of the program was to raise money which could then be used to purchase school supplies for children in need attending schools in the Coeur d'Alene area, books for a reading program and to support a national non-profit working on cancer research and patient support.  Each year We Care raised and spent thousands of dollars to help improve primary education for needy students.  Athletic Director Williams attempted to "weaponize" this program against Coach Whitcomb by claiming that Whitcomb had spent money improperly by donating it to other 501(c)(3) organizations.  This despite the fact that on numerous occasions when the We Care program made donations, Athletic Director Williams appeared for photos in the press or otherwise sought to enjoy the credit for the work done by Whitcomb and his student athletes. Director Williams had also lauded Whitcomb in prior performance reviews for his excellent work in the We Care program, in relation to other charitable efforts by the wrestling team, and for their support of local charities.

14.     Likewise for a number of years, NIC Wrestling had hosted a high school wrestling tournament.  The tournament helped accomplish several of NIC's goals.  It provided exposure to NIC for high school students in the region; it raised funds for the booster club; it assisted in growing and supporting public education including educational athletic programs; it assisted NIC Wrestling in identifying promising local wrestlers; and, it provided opportunities for NIC wrestlers to learn about the nuts and bolts of athletic administration.  The wrestling tournament was held in December each year, providing particular challenges during a part of the academic year when many instructors, coaches and administrators were unavailable.  For at least several years, Coach Whitcomb had deposited the funds received from the tournament into the booster club account.  Such deposits were typically made during the winter break while most administrators were away from the school.  Like the We Care program, Athletic Director Williams attempted to turn the highly successful and lauded Tri-State Wrestling Tournament into a weapon to be used against Coach Whitcomb.  Williams accused Whitcomb of improperly depositing the funds in violation of a directive Whitcomb had supposedly received at some previous time.  However, no such directive had ever been made to Whitcomb.  Williams accused Whitcomb of failing to provide a timely response to Williams' request for a detailed accounting of the funds, but in fact Whitcomb was prevented from providing that response because Williams' hand-picked, out-of-state bookkeeper had failed to provide necessary information to Whitcomb, and because Williams himself had failed to provide requested information to Whitcomb.  Despite being a source of the delay Williams reprimanded Whitcomb for not promptly responding to Williams' demands.

15.     During the 2016-2017 academic year, a wrestler from another institution had transferred to NIC. The transfer raised questions about whether and when the student would be

eligible under National Junior College Athletic Association rules to wrestle at NIC. Coach Whitcomb was prohibited from directly seeking information about eligibility status from the NJCAA. All such communications went through the Athletic Director and other Administrators. Athletic Director Williams had informed Coach Whitcomb that the student's eligibility forms had all been completed and transmitted to the NJCAA, and that only one form remained to be submitted and that Williams was obtaining and would submit that form. On this basis, Coach Whitcomb allowed the student athlete to attend, but not compete in, a sanctioned wrestling match. Because Athletic Director Williams had not actually completed the process, the student was ineligible to even attend the event, resulting in a finding of violation by the NJCAA. Although Coach Whitcomb had been prohibited by NIC from taking care of the eligibility issue, and despite the fact that Williams had told Coach Whitcomb that Williams was taking care of the matter, the violation was added onto Coach Whitcomb's Corrective Action Form.

16. Coach Whitcomb was also reprimanded for allegedly failing to properly account for funds raised and spent via a raffle. In fact, the funds which Athletic Director Williams thought were misspent had actually been misapplied by the bookkeeper who had been chosen by Williams despite the fact that she was located in Arizona rather than locally in north Idaho.

17. Because the allegations of the Corrective Action Form were so factually deficient, Whitcomb reasonably concluded that the intent of the form was to retaliate against him for his having repeatedly reported violations of state and federal law arising from NIC's continued refusal to accommodate the needs of students with disabilities including the student wrestler WW.

18. Coach Whitcomb communicated to members of NIC administration that Athletic Director Williams was abusing his power and issuing spurious Corrective Action Forms based

on fabricated "offenses."  At least one such administrator advised Whitcomb that he should just continue to do his job and "things would be fine."  No action was taken to reign in Athletic Director Williams' abuse of authority.

19.     Coach Whitcomb continued to advocate for the students in his program, including those with disabilities.  In 2017 and 2018, Whitcomb had multiple conversations with Director of Student Disability, Health and Counseling Services Tim Gerlitz.  In a 2017 conversation, Gerlitz told Whitcomb that Athletic Director Al Williams had decided not to accommodate student WW because he could get up the stairs just fine.  This was factually incorrect and contradicted all of the information that Whitcomb had previously provided to Williams, Gerlitz, and other administrators.  Gerlitz arranged for an accessible parking space to be reserved for any other student that was helping to transport student WW to school.  This "accommodation" failed to address the problem of accessing the wrestling practice area and was also ineffective because athletes from the basketball team as well as both the basketball coach and at least one assistance coach (a program preferred by A.D. Williams over Whitcomb's wrestling team) parked in the space repeatedly, making it unavailable for the double-amputee student.  Whitcomb raised these parking violations and their effect on a student with a disability but NIC took no action to either correct the problem or to devise an effective accommodation.

20.     In another conversation with Director of Student Disability Health and Counseling Services Gerlitz in late 2018 or early 2019, Whitcomb informed Gerlitz that student WW was still having trouble accessing the practice room and still required accommodation. Gerlitz reacted to that news by expressing surprise that the wresting team was "still practicing up there."  Gerlitz told Whitcomb that if Whitcomb had been less insistent on following the law back in 2016 it was more likely that the problem would have been solved more promptly.

Gerlitz thus admitted that Whitcomb's whistleblowing on ADA/Rehabilitation Act issues was actually resulting in NIC dragging its heels on complying with the law.

21.     During the 2018-2019 academic year, another issue arose at NIC.  An athlete in P.E. course physically assaulted an adjunct faculty member in the physical education department. The victim of the assault was a social friend of Coach Whitcomb.  As a result, he had significant information about the assault and the school's handling of it.

22.     In Whitcomb's opinion, NIC was grossly negligent in its handling of the assault allegation. Although the student was removed from the adjunct faculty member's class, he was not in any way barred from contacting the faculty member.  As a result, the student appeared in at least one other class taught by the same instructor, causing her significant and reasonable concern for her own safety.  NIC did not inform the faculty, staff, students or community that an assault had occurred, and did not, to Whitcomb's knowledge, take any other steps to protect the community or the victim of the assault.  Whitcomb advocated for a more robust response, believing that such a response was required to ensure that NIC was not guilty of discrimination of the basis of sex, or of failing to ensure that NIC was equally accessible to both male and female students and staff.

23.     In the fall of 2018, Coach Whitcomb was directed to attend a meeting with NIC Administrators.  At the meeting were Director of Human Resources Don Milikan, Vice President of Student Services Graydon Stanley, and Athletic Director Al Williams.  In the course of the meeting Coach Whitcomb was asked about a particular student athlete who is identified herein only as EW, in order to protect his privacy.  VP Stanley then informed Whitcomb that a student had reported to administration that EW was "bragging about" having gotten a grade of "A" for a physical education class that he never attended.  Coach Whitcomb expressed that he thought that

was unlikely, but otherwise continued to listen. VP Stanley's statement about EW was later shown to be false as what had actually happened was that EW's girlfriend had noticed and commented on the fact that EW's name did not appear on the list of people who had signed in at the student recreation center where the class was held. Coach Whitcomb expressed to the administrators that he had no knowledge of what particular classes EW was taking, and whether or how often he was attending those classes. He did, however, ask whether administration had checked on the attendance of any student other than EW, or of any student athlete who participated in a sport other than wrestling. Coach Whitcomb was informed that no students other than wrestlers had been scrutinized. Upon learning that, Coach Whitcomb stated that the investigation of his student athletes appeared to be part and parcel of the hostile work environment to which Whitcomb had been subjected ever since he recruited an African-American with disabilities as a student at NIC. Neither the VP of Student Services nor the Director of HR made any effort to learn more about Whitcomb's concerns over a hostile work environment, instead choosing to terminate the meeting.

24.     Beginning in October, 2018, NIC commissioned an allegedly "independent" investigation of student EW and the class in which he allegedly earned an "A" without ever attending. The class in question was taught by the adjunct faculty member who had been assaulted by a student, and then subjected to threatening gestures by that same student after NIC Administration failed to take action to prevent such misconduct.

25.     The investigation was not in any sense "independent." The investigator was a lawyer retained by NIC, and who was paid to represent the interests of NIC, not any independent, public or community interests. The lawyer determined that the adjunct professor had taught a physical conditioning class. Many of the students in the class were student athletes.

As to the student athletes, the instructor was willing to consider the workouts they performed as part of their team practices toward the requirements of the class to perform a certain number and/or intensity of physical conditioning workouts. She admitted that she had not, in every case, ensured that the students really were performing a sufficient number of workouts. Since each of the students was a member in good standing of an NIC athletic team, it was unlikely that any of them was failing to engage in enough physical conditioning to earn a grade in the course.

26.     The adjunct instructor was also asked whether she had ever been in contact with any of NIC's coaches regarding their athletes registering for her class or participating in the class for a grade. The adjunct instructor informed NIC's administrators that the only coach that had contacted her directly was Corey Symons, head basketball coach. She further informed NIC that Symons had told her he was having two of his basketball players enroll in her class, that they would not be attending the class, but that Coach Symons would make sure they actually did appropriate workouts. When the instructor was directly asked whether she had ever been contacted by or pressured by any of the wrestling coaches with regard to students enrolled in her class, she replied, "No."

27.     Neither the administrators who had questioned the adjunct professor, nor the allegedly independent attorney who performed an "investigation" followed up on those responses. The attorney/investigator later met with Coach Whitcomb. On being asked, he told Whitcomb that he had not interviewed the basketball coach, nor any of the basketball players, belying any intent to conduct a thorough investigation of the alleged academic integrity violations. Rather than explaining why such an obvious line of inquiry was not pursued, the attorney/investigator instead began questioning the nature of Coach Whitcomb's relationship with the adjunct instructor. At least two Assistant Coaches from the wrestling team were also

questioned about the nature of the relationship between Coach Whitcomb and the adjunct instructor.  Whitcomb later learned that although NIC's advocate/investigator had contacted the head basketball coach by telephone, there was no investigation similar to that which was conducted into the wrestling team and during which the advocate/investigator had interviewed the wrestling coach, all of the wrestling assistant coaches, and multiple student athletes on the wrestling team.  To the best of Coach Whitcomb's knowledge, there was never any attempt to discover whether anyone other than the wrestling coaches and the adjunct instructor who had been physically assaulted by a student may have engaged in what were termed "academic integrity violations."

28.     As NIC's attorney completed the "investigation," Assistant Wrestling Coaches were repeatedly required to meet with administrators and the attorney/investigator.  During these meetings, the Assistant Coaches were pressured by administrators and the attorney for NIC to make statements implicating Coach Whitcomb in violations of the academic integrity rules of NIC.  At least one Assistant Coach was assured that his job would be protected if he would say that Coach Whitcomb had instructed him to put student EW in the adjunct instructor's class in order to get him an easy grade.  None of the Assistant Coaches was willing to tell that lie.  Each of them has left employment with NIC.

29.     In January, 2019, Coach Whitcomb was called to a final meeting with representatives of NIC.  When Whitcomb refused to resign his position, he was informed that he was being terminated.  The basis provided for his termination was that Whitcomb either knew or should have known about violations of NIC's academic integrity rules.  To Whitcomb's knowledge there were no academic integrity violations committed by any of the coaches in the wrestling program.

30.     On information and belief, the only coaches who knew or should have known about academic integrity violations were those in the basketball program, none of whom received any discipline from NIC.

31.     Coach Whitcomb's employment was terminated on or about January 19, 2019.

32.     During the spring of 2019, NIC underwent an investigation by the Northwest Athletic Conference (NWAC).  NIC competes in and is subject to the rules and jurisdiction of the NWAC in most sports.  NIC Wrestling, however, has long competed in and been subject to the regulatory jurisdiction of the National Junior College Athletic Association (NJCAA).  The NWAC's investigation resulted in findings of multiple rule violations regarding the conduct of the basketball program and its provision of illegal benefits to players; irregularities in the bookkeeping procedures utilized by the booster program; employment of basketball players at basketball camps and the failure to maintain required records to comply with rules for work-study funding.  The NWAC investigators took special note of an admission by NIC's Vice President of Finance that at NIC "[r]ules are not always applied to the Athletics Department." The NWAC investigation also identified seven other "points of concern" which it did not feel constituted violations at the time but which could have caused, become or be later deemed violations.

33.     The Wrestling Program run by Coach Whitcomb was unique at NIC as the only athletic program competing in the NJCAA rather than the NWAC.  While the NJCAA had previously found that NIC committed an eligibility error, there had never been any NJCAA investigation of NIC Wrestling that compared in scope, seriousness, or severity of penalties to the NWAC findings concerning the basketball and booster programs.  Despite these outcomes,

NIC has not only refused to terminate the employment of the individuals involved in the NWAC violations, it has returned the basketball coach to his coaching duties.

34.    The failure to take serious disciplinary action against the basketball coach, either when NIC's investigation revealed his involvement in alleged "academic integrity" violations, or after he was found to have directly participated in multiple violations of NWAC rules, directly contrasts with the maximum penalty imposed on Coach Whitcomb for merely having constructive knowledge of alleged academic integrity violations committed by others.

35.    The actions taken by NIC's agents and employees set out herein were undertaken within the course and scope of those agents' employment.  NIC, its agents and employees acted, at all times under color of, though in contravention of state law.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### REHABILITATION ACT

36.    Beginning in 2016 and through the termination of his employment, Coach Whitcomb made multiple attempts to secure NIC's compliance with the requirements of the Federal Rehabilitation Act.  That Act requires, among other things, that programs receiving federal funding ensure that their programs do not discriminate on the basis of disability, including by failing to provide reasonable accommodations for participants with disabilities.

37.    The Rehabilitation Act by expressly adopting statutory standards established in the Americans with Disabilities Act also prohibits retaliation, coercion, interference or intimidation of individuals who oppose any act or practice that is prohibited by the Act, or who have aided or encouraged other individuals in seeking to oppose an unlawful act or seeking to exercise rights and privileges provided by the Rehabilitation Act.

38.     As a direct result of Coach Whitcomb's attempts to encourage and assist a student in exercising their rights under the Rehabilitation Act, and for having opposed conduct of NIC that was made unlawful by that Act, NIC, through its agents and employees attempted to coerce, intimidate or interfere with Coach Whitcomb's efforts on behalf of a student with disabilities.  In addition, NIC, through its agents and employees retaliated against Coach Whitcomb for having opposed NIC's unlawful refusal to accommodate the needs of a student with disabilities.

39.     The intimidation, coercion, interference and retaliation took the form of a Corrective Action Notice based on spurious concerns, the initiation of a one-sided investigation focused solely on Coach Whitcomb and his program, and the termination of Coach Whitcomb's employment, along with the termination of nearly all of his coaching staff.

40.     The stated reason for Coach Whitcomb's termination, alleged academic integrity violations, was a false and pretextual basis meant to cover up NIC's intent to retaliate against and silence Coach Whitcomb in his efforts to secure NIC's compliance with federal and state laws.

41.     As a direct and proximate result of NIC's actions, Coach Whitcomb has suffered damages in the form of lost wages, benefits, and damage to his reputation.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. §1983/FIRST AMENDMENT

42.     Starting in 2016 and through the termination of his employment, Coach Whitcomb made multiple attempts to bring to light what he believed were violations of state and federal law, including NIC's compliance with the requirements of the Federal Rehabilitation Act, the Americans with Disabilities Act, the Idaho Human Rights Act, and the Civil Rights Act, particularly provisions of Titles VII and IX of that Act relating to employment and equal

educational opportunity.  These concerns were matters of public interest as they involved the use of public funds to engage in what Coach Whitcomb believed were violations of law.

43.     As a result of his speech on issues of public concern, and in an effort by NIC to silence him, Coach Whitcomb suffered intimidation, coercion and harassment from NIC's agents and employees all in violation of Coach Whitcomb's rights under the First Amendment to the United States Constitution.

44.     As a direct and proximate result of NIC's actions, Coach Whitcomb has suffered damages in the form of lost wages, benefits, and damage to his reputation.

### THIRD CLAIM FOR RELIEF

### IDAHO PROTECTION OF PUBLIC EMPLOYEES ACT

45.     Starting in 2016 and through the termination of his employment, Coach Whitcomb made multiple attempts to bring to light what he believed were violations of state and federal law, including NIC's compliance with the requirements of the Federal Rehabilitation Act, the Americans with Disabilities Act, the Idaho Human Rights Act, and the Civil Rights Act, particularly provisions of Titles VII and IX of that Act relating to employment and equal educational opportunity.

46.     By first issuing a Corrective Action Notice and then terminating his employment, NIC took adverse action against Coach Whitcomb. The adverse action was taken against Coach Whitcomb because of his reporting of and attempts to stop violations of state and federal law, in violation of Idaho Code §6-2104.

47.     As a direct and proximate result of NIC's actions Coach Whitcomb has suffered damages in the form of lost wages, benefits, and damage to his reputation.

WHEREFORE, Plaintiff Patrick Whitcomb prays for relief as follows:

    a.   For trial by jury as to all matters so triable;

    b.   For judgment in his favor on all claims;

    c.   For an award of damages in amounts to be proven;

    d.   For an award of attorney fees and costs;

    e.   For all other relief the Court deems just and proper.

DATED this 8th  day of October, 2019.

PIOTROWSKI DURAND, PLLC


_____/s/ James M. Piotrowski_____
James M. Piotrowski
Attorneys for Plaintiff Patrick Whitcomb