UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAT WHITCOMB,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH IDAHO COLLEGE,<br><br>    Defendant. | Case No. 2:19-cv-cv-392-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendant North Idaho College's Motion in Limine (Dkt. 58). For the reasons set forth below, the Court will deny or defer the pending motions in limine.

## BACKGROUND

Plaintiff Patrick Whitcomb brings this lawsuit against his former employer, Defendant North Idaho College ("NIC"). From 1997 to January 2019, Whitcomb was NIC's head wresting coach. Whitcomb had a winning record, including national championships, and many All-American athletes on his teams. NIC terminated Whitcomb in 2019 for alleged violations of the college's academic integrity policies.

Whitcomb counters that NIC's accusations against him were in retaliation for advocating on behalf of a disabled student-athlete he had recruited to compete in NIC's wrestling program. Whitcomb maintains that his advocacy on behalf of the student

wrestler, a double amputee, was "not well-received by NIC's administrators and led to nearly three years of ongoing harassment, ultimately ending in Whitcomb's termination." *Pl's Trial Br.*, p. 1, Dkt. 48. Whitcomb filed this lawsuit against NIC, alleging violations of the Rehabilitation Act, the First Amendment, and the Idaho Whistleblower Act.

A bench trial for this matter is set for March 28, 2023. Whitcomb's whistleblower claim was dismissed on summary judgment, and he withdrew his First Amendment claim, leaving only Whitcomb's retaliation claim under the Rehabilitation Act. The parties agree that Whitcomb has established that he engaged in protected activity by advocating on the disabled student's behalf and that his termination constitutes an adverse employment action. Thus, the only remaining issue for trial is whether NIC terminated Whitcomb's employment because of his engagement in protected activity.

## LEGAL STANDARD

A motion in limine is a motion "at the outset" or one made "preliminarily." BLACK'S LAW DICTIONARY 803 (8th ed.2004). The power to rule on motions in limine inheres in the Court's role in managing trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). "Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002); *see also Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n. 4 (9th Cir. 2013) (quoting *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) ("A motion in limine is a procedural mechanism to limit in advance testimony or

evidence in a particular area."). The key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce*, 469 U.S. at 40.

A motion in limine should not, however, be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Rather, unless the proffered evidence is clearly inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. *See, e.g., Crawford v. City of Bakersfield*, No. 1:14-cv-01735-SAB, 2016 WL 5870209, at *2 (E.D. Cal. Oct. 6, 2016); *see also Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997) (motions in limine may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose."). For similar reasons, motions in limine excluding broad categories of evidence are disfavored—as such issues are more fairly dealt with during trial as the admissibility of evidence arises. *Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

Because motions in limine are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce v. United States*, 469

U.S. 38, 41 (1984). In addition, if the in limine procedural environment makes it too difficult to evaluate an evidentiary issue, it is appropriate to defer ruling until trial. *Jonasson*, 115 F.3d at 440 (delaying until trial may afford the judge a better opportunity to estimate the evidence's impact on the jury).

These limiting principles apply in all trial settings, but they have even greater force in a bench trial, where the dangers of unfair prejudice, irrelevancy, and confusion are minimal, so motions in limine are less important than in a jury trial. *See*, *e.g, E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) ("[I]n a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial"); *United States v. Shukri*, 207 F.3d 412, 419 (7th Cir. 2000) ("In a bench trial, we assume that the district court was not influenced by evidence improperly brought before it unless there is evidence to the contrary."). Indeed, in a bench trial the trial judge has flexibility to provisionally admit testimony or evidence and then discount or disregard it if upon further reflection it is entitled to little weight or should not have been admitted at all. *See Farmer Bros. Co.*, 31 F.3d at 898.

## ANALYSIS

### 1. Recording and Transcript of Keri Stanley Meeting

NIC seeks to exclude a recording and transcript of a meeting between Assistant Wrestling Coach Keri Stanley, NIC President Rick MacLennan, and NIC Vice President Graydon Stanley. The recorded meeting involved NIC President MacLennan and NIC Vice President Graydon Stanley, who called the meeting to inform Coach Stanley that

NIC intended to fire him. Coach Stanley had been implicated in the same investigation used to justify Whitcomb's termination. Coach Stanley intends to testify that the NIC administrators told him at the meeting that he could keep his job if he would implicate Whitcomb in the alleged misconduct. Coach Stanley refused to do so, and he was fired.

Whitcomb intends to introduce evidence of the meeting – and specifically the recording and transcript – to show that MacLennan and Graydon Stanley, both of whom participated in the decision to terminate Whitcomb, did not terminate Whitcomb with the intent of rooting out an academic integrity violation, as they claim. In fact, according to Whitcomb, this recording demonstrates that they would have allowed Coach Stanley – who had allegedly violated the same policy that led to Whitcomb's termination – to stay if Coach Stanley simply agreed to implicate Whitcomb. NIC, however, argues that the recording and transcript are inadmissible hearsay under Federal Rule of Evidence 802 "because they contain out-of-court statements by Keri Stanley that do not fall within any exception to the hearsay rule." *Def's Opening Br.*, p. 4, Dkt. 58.

Under Rule 801(c), hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)-(2). Hearsay testimony is generally inadmissible. Fed. R. Evid. 802. A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. In addition, some out-of-court statements are not hearsay even when they are offered for proof of the matter

asserted. *See* Fed. R. Evid. 801(d). Statements that are "offered against an opposing party" and that were "made by the party in an individual or representative capacity," were "made by a person whom the party authorized to make a statement on the subject," or were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" are not hearsay. Fed. R. Evid. 801(d)(2)(A),(C), & (D).

There is no doubt that any statements made by then-NIC President MacLennan and NIC Vice President Graydon Stanley during the meeting with Coach Stanley qualify as non-hearsay party admissions under Rule 801(d)(2) – and it does not appear that NIC argues otherwise. Instead, NIC seeks to exclude the entire recording and transcript on the basis that Coach Stanley's statements made during the meeting constitute inadmissible hearsay and do not qualify as an admission of a party-opponent under Rule 801(d)(2)(D).

The Court agrees – to the extent that Whitcomb seeks the admission of Coach Stanley's statements to prove the truth of the matter asserted – that Coach Stanley's statements likely do not qualify as the admission of a party-opponent. Rule 801(d)(2)(D) sets forth three elements necessary for admitting a statement that would otherwise be excluded as hearsay: (1) the statement must be made by an agent or employee of the party against whom the statement is being offered; (2) the statement must concern a matter within the scope of that employment relationship; and (3) the statement must be made while the declarant is yet employed by the party." *Weil v. Citizens Telecom Servs. Co.*, LLC, 922 F.3d 993, 999 (9th Cir. 2019). In determining whether the statement concerns a matter within the scope of the employment relationship, the Ninth Circuit has held that

"Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment." *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986).

Here, Whitcomb has laid no foundation to show that Coach Stanley's statements made during the meeting concern a matter within the scope of his employment. In fact, Whitcomb does not even specify what statements made by Coach Stanley he seeks to admit, except in response to other statements made by President MacLennan and Vice President Graydon Stanley, such as "okay," "mmhm," "yeah," and the like. The Court cannot evaluate whether Coach Stanley's statements constitute hearsay without knowing even what those statements are and for what purpose Whitcomb seeks them admitted.

That said, if Whitcomb does not seek to admit Coach Stanley's statements to prove the truth of the matter asserted but rather to give context to President MacLennan and Vice President Stanley's statements, Coach Stanley's statements on the recording would not necessarily constitute "hearsay." Moreover, Coach Stanley will be present at trial to testify. In that regard, the degree of reliability necessary for admission is greatly reduced where, as here, the declarant is testifying and is available for cross-examination, thereby satisfying the central concern of the hearsay rule. In addition, any concerns associated with the hearsay rule are further reduced given that this is a bench trial, and the Court may provisionally admit testimony or evidence and then discount or disregard it if it later determines that the evidence is entitled to little weight or should not have been admitted at all. *See Farmer Bros. Co.*, 31 F.3d at 898.

Likewise, as this is a bench trial, NIC's arguments that the recording and transcript should be excluded under Rule 403, on the grounds that they are not relevant, are cumulative of other testimony, portions are inaudible, and it would be a waste of time to listen to the recordings, hold less water than if this were a jury trial. In a bench trial Rule 403 has a more limited role, because there is less risk of unfair prejudice when the case is tried before a judge instead of a jury. *Id*. (citing *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517 (5th Cir. Unit A 1981) (holding that excluding relevant evidence in a bench trial on the basis of unfair prejudice is a useless and illogical procedure). Indeed, "[b]ecause the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous. It would be, in effect, "coals to Newcastle," asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009).

At this point, the Court simply does not have enough information to rule in limine on whether the recording and transcript are admissible. It seems clear, however, that what was said in the meeting is relevant in potentially shedding light on President MacLennan and Vice President Stanley's motives in terminating Whitcomb, and that any statements made by these individuals constitute admissions of party-opponent and thus are non-hearsay. Coach Stanley therefore may testify at trial to what he recalls President MacLennan and Vice President Stanley said to him during the meeting. It remains open whether the Court will admit the entire recording and transcript or portions of the

recording and transcript into evidence. At the very least, the Court will need to review the transcript to make that determination.

The Court, however – depending on the length of the recording –is inclined to admit the recording and transcript into evidence and give it the weight, if any, to which it is entitled. As Judge Posner has observed, in a bench trial "it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled." S*mithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003), aff'd, 365 F.3d 1306 (Fed. Cir. 2004), *opinion vacated on reh'g en banc*, 403 F.3d 1328 (Fed. Cir. 2005), *and superseded*, 403 F.3d 1331 (Fed. Cir. 2005), a*nd aff'd on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005).

### 2. Speculative Beliefs

NIC has also moved to limit testimony, it claims, consists of the "speculative beliefs" and "subjective opinions" of "others" on which Whitcomb has relied "in an attempt to establish the motive behind [NIC's] decision to terminate him." *Def's Opening Br.*, p. 5, Dkt. 58-1. According to NIC, Whitcomb has sought to use "the 'feelings' of Keri Stanley and Don Millikan to argue he was terminated for his advocacy of the disabled [] student," but the "subjective opinions" of these two witnesses are "not based on any facts or observations but [are] instead bare assertions of their speculative feelings." *Id.* NIC, in its reply brief, added Brandon Richardson to the list of witnesses it argues has testified based solely on his "baseless opinions and subjective beliefs" regarding NIC's motives for terminating Whitcomb.

MEMORANDUM DECISION AND ORDER - 9

NIC initially failed to identify any such specific testimony it seeks to exclude. In its reply brief, however, NIC cites a few examples of the type of testimony it deems speculative and seeks to exclude. But, even with NIC identifying several examples of such speculative testimony, it is difficult for the Court to assess the speculative nature of the testimony without the proper context and foundation. While NIC is generally correct that testimony based purely on speculation is inadmissible and should be excluded. *See, e.g., United States v. Torralba-Mendia*, 784 F. 3d 652, 658 (9th Cir. 2015), lay opinions may be admissible if the opinion is rationally based on personal perceptions of events or conduct, and if it is helpful to the trier of fact, Fed. R. Evid. 701. The Court cannot make this determination based on what has been submitted and will defer ruling on this issue until trial.

As noted, "[o]rders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg*, 519 F.2d at 712. "A better practice is to deal with questions of admissibility of evidence as they arise." *Id*. The Court declines to categorically exclude the opinions of three witnesses it has not heard testify and does not know upon what perceptions or facts these witnesses base their opinions. Instead, the Court will deal with the questions of admissibility of the testimony of these three witnesses in the broader context of trial.

### 3. Expert Opinions

NIC seek to exclude what it characterizes as "new" opinions of Whitcomb's damages expert, Scott Kimber, first disclosed in a supplemental report on February 21,

2023. A party seeking to introduce expert testimony at trial must disclose to the opposing party a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B) "The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examinations at trial." *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 5–6 (D.D.C.2005). Rule 37(b)(2)(A)(ii) permits a court to prohibit a party, for failing to obey a discovery order, from introducing designated matters into evidence. Rule 37(c)(1) further provides for the exclusion at trial of any information not disclosed pursuant to Rule 26(a), unless the failure to disclose is harmless or if there was substantial justification for such failure.

     Rule 26(e) provides a limited exception to the deadlines provided under Rule 26(a)(2) by requiring an expert witness to supplement his report if the report is "incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Supplementation under Rule 26(e) "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). By contrast, a supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under

Rule 37(c). *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 649 (D. Haw. 2008) (internal citation and quotation marks omitted). Rule 26(e) does not "give license to sandbag one's opponent with claims and issues which should have been included in the expert witness" report." *Id.* at 639.

Here, to the extent Kimber's supplemental report merely recalculates lost past wages to include lost "past" wages for 2021 and 2022, this constitutes proper supplementation. Whitcomb initially disclosed Mr. Kimber as his damages expert on October 29, 2020, in compliance with the Court's scheduling order. In that report, Mr. Kimber calculated the difference between the wages and benefits Whitcomb earned at NIC, and would have expected to earn if his employment had continued, and the wages and benefits Whitcomb actually received between his termination in January 2019, and the date of Mr. Kimber's report in October 2020.

Over two years have past since Whitcomb made his initial expert disclosure, and data, including Whitcomb's 2020, 2021, and 2022 W-2 forms that show the wages Whitcomb actually earned for those year, was not available when he made his initial expert disclosure. "Generally speaking, supplementation of an expert report is proper where it is based on new information obtained after the expert disclosure deadline and the supplemental report was served before the time for pretrial disclosures." *Colony Ins. Co. v. Colorado Cas. Ins. Co.*, No. 212CV01727APGNJK, 2014 WL 12646048, at *2 (D. Nev. May 28, 2014); *Keener*, 181 F.R.D. at 640. It was therefore proper for Whitcomb to supplement this initial disclosure to include this data. And given that Whitcomb made

this supplemental disclosure more than 30 days before trial, such supplemental report was timely. Fed. R. Civ. P. 26(e)(2) (Supplemental expert reports must be disclosed "by the time the party's pretrial disclosures under Rule 26(a)(3) are due," which is 30 days before trial, Fed. R. Civ. P. 26(e)(2)).

The issue is, however, that it appears that Whitcomb's "supplemental expert witness disclosure" did more than incorporate this new data to recalculate lost past wages. Instead, Kimber appears to have expanded the methodology used and the multiplying values, which resulted in an increase in Whitcomb's claimed damages by $174,000. At this point, the Court is inclined to disregard information included in the supplemental report to the extent the supplemental report does more than simply rely on new information but instead differs significantly from the initial report. For example, Kimber slightly increased pre-incident and post-incident work life expectancy and used higher values for the potential growth rate and the pre-incident growth rate.

But, as this Court has noted repeatedly, this is a bench trial, substantially reducing the utility of in limine rulings. At trial, the Court will give Kimber an opportunity to explain why he has increased the amount of Whitcomb's damages by $174,000 and why he increased Whitcomb's life expectancy and work-life expectancy and why he used higher growth rates. If the Court is not satisfied by Kimber's explanations or if the Court believes allowing Kimber to testify based on information included in the supplemental report would prejudice NIC because such information was not properly disclosed, the Court will disregard this testimony – or, at least, afford it the slight weight it deserves.

*See e,g., F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("When we consider the admissibility of expert testimony, we are mindful that there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial.") (citations omitted).

## ORDER

**IT IS ORDERED that** Defendant North Idaho College's Motion in Limine (Dkt. 58) is DENIED or deferred until trial.

DATED: March 22, 2023

_____
B. Lynn Winmill
U.S. District Court Judge