Bentley G. Stromberg ISB No. 3737
Tully P. FitzMaurice, ISB No. 10649
CLEMENTS, BROWN & McNICHOLS, P.A.
Attorneys at Law
bstromberg@clbrmc.com
321 13th Street
Post Office Box 1510
Lewiston, Idaho 83501
(208) 743-6538
(208) 746-0753 (Facsimile)

      Attorneys for Defendant
      North Idaho College

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PATRICK WHITCOMB, | ) | |
| | ) | Case No: 2:19-cv-392-BLW |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S PROPOSED |
| vs. | ) | FINDINGS OF FACT AND |
| NORTH IDAHO COLLEGE, | ) | CONCLUSIONS OF LAW |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Defendant North Idaho College ("NIC" or "Defendant") submits its proposed Findings of

Fact and Conclusions of Law, and as follows:

**<u>INTRODUCTION</u>**

Plaintiff, Patrick Whitcomb, was employed as the head wrestling coach of NIC from

1997 until he was terminated in January, 2019. Plaintiff has sued NIC alleging his termination

violated the Federal Rehabilitation Act[1], in that his termination was due to his protected activity of advocating for a disabled wrestler. The only element in dispute regarding this claim is causation. A bench trial was held to adjudicate Plaintiff's claim from March 28, 2023 through March 30, 2023. For the reasons stated in the following Findings of Fact and Conclusions of Law, the Court enters Judgment in favor of NIC.

## FINDINGS OF FACT

**A.      Pat Whitcomb's Employment at NIC**

1.      NIC is a public educational institution located in Coeur d' Alene, Idaho. NIC maintains a men's wrestling team.

2.      Plaintiff, Patrick Whitcomb, was employed as the head wrestling coach of NIC's wrestling team from 1997 until his termination in January, 2019.

3.      In his position as the head wrestling coach, Plaintiff, oversaw two assistant wrestling coaches and the academic performance of his wrestlers.

4.      During his tenure at NIC, Plaintiff's wrestling teams were generally successful.

5.      Plaintiff received generally positive performance ratings. However, Plaintiff's supervisor was at times critical of Plaintiff's management of his team, including the team's academic standing relative to other athletic teams and NIC as a whole, and of his handling of financial matters.

---

[1] Plaintiff raised other claims, but those were dismissed on Defendant's Motion for Summary Judgment. (See Dkt. No. 40).

DEFENDANT'S PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW                       - 2 -

6.      On January 30, 2017, Plaintiff was provided with a Corrective Action Form addressing concerns with the management of his team and various financial matters. Plaintiff submitted a written response to the Corrective Action Form. Neither the Corrective Action Form nor Plaintiff's response made reference to issues outside of the concerns of team or financial management.

7.      Plaintiff was terminated on January 11, 2019, based on the conclusions of an independent investigation of the Athletic Department at NIC, where wrestlers were granted credit for classes they never attended.

8.      Prior to his termination, Plaintiff maintained an on and off romantic relationship with the instructor of the PE classes that the wrestlers received credit for never attending, Amy Moffat.

**B.      Advocacy.[2]**

9.      In the spring of 2016, Plaintiff recruited a double amputee student wrestler to NIC's wrestling program.

10.     After recruiting the student, Plaintiff requested that the wrestling practice area be moved to a building with ground level access. Plaintiff's request was denied because the building at issue was already committed to the women's softball team.

11.     After receiving the denial, Plaintiff reached out to NIC's ADA director, Tim Gerlitz, and requested accommodations for the disabled wrestler, specifically that the wrestling team be granted the ground level building instead of the women's softball team.

---

[2] Defendant does not deny that Plaintiff's advocacy for the student was a protected activity for purposes of a Rehabilitation Act retaliation claim.

DEFENDANT'S PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW                    - 3 -

12.     Tim Gerlitz and other NIC employees investigated, developed and approved an alternate accommodation for the student. Plaintiff did not implement this approved accommodation.

13.     Plaintiff continued to discuss accommodations and to accompany the student to disability assessment meetings until the fall of 2018.

**C.      Investigation**

14.     In September of 2018, Graydon Stanley, NIC's then Vice President of Student Affairs, received information that a wrestler had returned from summer break and had learned that he had received an A in a PE class taught by Ms. Moffat – a class he had neither registered for nor attended.

15.     NIC officials conducted a limited initial investigation into the claims, which involved interviewing multiple staff, faculty and students.

16.     In conducting the initial investigation, Mr. Stanley spoke to the subject wrestler, who admitted that he had not registered or attended the class. Through other sources, Mr. Stanley was also informed that Plaintiff had spoken to the subject wrestler and told him that he would take care of it.

17.     Due to the nature of the claims, and concerns for potential conflicts of interest or bias, NIC's legal counsel retained an independent investigator – Peter Erbland – to conduct an investigation of the athletics' department regarding the academic dishonesty issue.

18.     Mr. Erbland began his investigation on October 5, 2018.

19.     During the course of his investigation, Mr. Erbland interviewed twelve (12) persons, including Plaintiff, with knowledge of the academic integrity issue in NIC's athletics department. Mr. Erbland also reviewed numerous documents, including the rosters and attendance records of classes taught by Ms. Moffatt.

20.     Based on the information procured from his interviews and review of the documentation, Mr. Erbland, on December 17, 2018, issued a report summarizing his findings. Neither the disabled wrestler or Plaintiff's advocacy for that wrestler were mentioned in the report or by anyone during the course of Mr. Erbland's investigation.

21.     Mr. Erbland concluded, based on the facts, that student athletes, including wrestlers, had been enrolled in Ms. Moffat's classes and had received A's without even attending. Mr. Erbland also concluded that Plaintiff knew of the arrangement with Ms. Moffat or was at least grossly negligent in not knowing of it.

22.     Mr. Erbland's December 17, 2018 report was delivered to NIC's then President Rick MacLennan.

**D.      Termination[3]**

23.     Following the receipt of Peter Erbland's Investigative Report, NIC administration, including Al Williams, Graydon Stanely and Rick MacLennan, had a meeting to discuss the report and the implications of the report.

24.     During the course of the meeting, NIC officials, based on the conclusions of the report, decided that Plaintiff's employment with NIC should be terminated.

---

[3] Defendant does not dispute that under current caselaw, a termination is considered an adverse employment action for purposes of a Rehabilitation Act retaliation claim.

DEFENDANT'S PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW                    - 5 -

25.    In a letter dated January 11, 2019, Plaintiff was notified of his termination and the basis for his termination, which was:

> The wrestling program's connection with this academic integrity issue, involving both the physical education instructor, the wrestling coaches and the students under your supervision, indicates either knowledge of the unacceptable practices or unacceptable negligence in failing to supervise the program. Consequently, your employment with NIC is being terminated and this termination will be effective two weeks from the date of this letter.

(Ex. 2008).

26.    Rick MacLennan, Graydon Stanely, and Al Williams testified that Patrick Whitcomb's termination was solely due to the conclusions of the Independent Investigation.

27.    No credible evidence was presented that Plaintiff's advocacy for the disabled student was the "but for" cause of his termination, or even a motivating factor.

## CONCLUSIONS OF LAW

### A.    Prima Facia Case For Retaliation Under the Rehabilitation Act.

A prima facie case of retaliation under the Rehabilitation Act is proven by showing that: (1) the plaintiff engaged in a protected activity; (2) the plaintiff suffered a materially adverse employment action; and (3) there exists a but-for causal connection between the protected activity and the adverse employment action. See Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 849 (9th Cir. 2004). A "protected activity" under the Rehabilitation Act is opposing practices made unlawful by the Rehabilitation Act, including complaining about the treatment of others. See Ray v. Henderson, 217 F.3d 1234, 1240 n. 3 (9th Cir. 2000).  Plaintiff has the burden of proving that his advocacy was the "but-for" cause of his termination. Walker v. City of Pocatello, Civ. No. 4-15-498, 2020 WL 4043487, at *3 n. 8 (D. Idaho July 16, 2020) (quoting University of Texas Sw.

Med. Ctr. V. Nassar, 133 S. Ct. 2517, 2533 (2013) (applying but-for causation standard to Title VII retaliation claim).

The parties agree that the only element at issue is that of causation.[4]

**B.    Plaintiff's Advocacy Was Not The "But For" Causation of His Termination.**

The retaliation claim must be proved according to traditional principles of but-for causation. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338, 359-360 (U.S. 2013) (applying but-for causation to Title VII retaliation claims)

While the Ninth Circuit has not yet applied the Nassar but-for causation standard to Rehabilitation Act retaliation claims, "[i]t is fairly evident that retaliation claims brought under the Rehabilitation Act require but-for causation." Brooks v. Capistrano Unified School Dist., 1 F.Supp.3d 1029, 1036-37 (C.D. Cal. 2014) (relying on University of Texas southwestern Medical Center v. Nassar, 570 U.S. 338, 359-360 (U.S. 2013) (applying but-for causation to Title VII retaliation claims); Equal Employment Opportunity Comm'n v. Evergreen Alliance Golf Ltd., 2013 WL 4478870, at *11 (D.Ariz. Aug. 21, 2013) ("Retaliation claims require proof by a preponderance of the evidence that the adverse employment action would not have occurred in the absence of the protected activity.")).

---

[4] The McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), burden shifting analysis is inapplicable at trial in light of Plaintiff's burden of proving but-for causation See. E.g., Brown v. City of Caldwell, 2012 WL 892232, at *7 (D. Idaho 2012). Federal law is clear that "[t]he McDonnell-Douglas test is used on summary judgment, not at trial." Shelley v. Geren, 666 F.3d 599, 607 (9th Cir. 2012). Costa v. Desert Palace, Inc., 299 F.3d 838, 855-56 (9th Cir. 2002); Kotewa v. Living Independence Network Corp., 2007 WL 433544, at *10 (D. Idaho 2007).

DEFENDANT'S PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW              - 7 -

Here Plaintiff has failed to meet his burden in proving the element of causation. The testimony as outlined above showed that Plaintiff's termination was solely related to the conclusions of the independent investigation conducted by Mr. Erbland. Rick MacLennan, the past NIC President who ultimately made the decision to terminate Plaintiff, testified conclusively that his decision rested solely on the conclusions of the report. This testimony is also corroborated by Graydon Stanley and Al Williams, who participated in the discussion regarding the implications of the independent investigation and Plaintiff's employment.

Plaintiff's circumstantial evidence presented did nothing to prove that his termination would not have occurred "but for" his advocacy for the disabled student. The testimony of Plaintiff and other witnesses called by him presented mere speculation as to the basis of Plaintiff's termination. This testimony, apart from being purely speculative, would have required the Court to make illogical inferences as to the element of causation. The Court declines to make these inferences.

In addition, while the Court could infer causation based in part on the close temporal proximity between Plaintiff's protected activity and his subsequent termination, such an inference is not appropriate under the facts of this case. Dilettoso v. Potter, 243 F. App'x 269, 273 (9th Cir. 2007) ("temporal proximity does not establish causation, but is simply evidence upon which an inference of causation may be based . . ."); Coszalter v. City of Salem, 320 F.3d 968, 977-78 (9th Cir. 2003) (application of a "specified time period" to establish retaliation would be "unrealistically simplistic"). NIC presented sufficient evidence to establish that, between the time of Plaintiff's last meeting regarding accommodations for the disabled wrestler and the time of his termination, Plaintiff's prior knowing and/or negligent conduct was brought to light through the

DEFENDANT'S PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW                    - 8 -

independent investigation. Accordingly, the Court cannot attribute knowledge to NIC based solely on temporal proximity. Zsenyuk v. City of Carson, 99 F. App'x 794, 797 (9th Cir. 2004) (no causal connection between plaintiff's protected activity and his termination where he was involved in intervening incidents reflecting poorly on his abilities and professional conduct); Day v. Sears Holdings Corp., 930 F. Supp. 2d 1146, 1187-88 (C.D. Cal. 2013) (granting summary judgment on retaliation claim, despite close proximity between termination and protected activity, where plaintiff engaged in intervening policy violation).

Plaintiff's other proffered arguments do not establish that his termination was because of his advocacy for the disabled wrestler.  Speculative testimony regarding the subjective intent of NIC's administers failed to rebut the testimony of those who made the decision to terminate. Further, the treatment of Keri Stanley and Cory Symons is not adequate proof that Plaintiff's advocacy was the "but for" cause of his termination. Their actions and/or status were not comparable to Plaintiff's and are thus not justifiable comparators. Further, NIC presented sufficient evidence to show that Cory Symons' actions were distinguishable from those of Plaintiff's and thus not a true comparison.

Similarly, Plaintiff's profession of innocence in the academic integrity issue at the core of the investigation does not establish that his termination would not have occurred absent his advocacy. It is not incumbent on this Court to review de novo the evidence leading to Mr. Erbland's conclusions and come to its own conclusions. Instead, this Court must only decide if Plaintiff was terminated because of his advocacy of the disabled wrestler. The advocacy did happen, but had it not happened, this Court finds that Plaintiff still would have been terminated

for his apparent involvement or disregard of the academic integrity issues occurring within his wrestling team. Thus, Plaintiff was not retaliated in violation of the Rehabilitation Act.

**C.      Damages**

Because Plaintiff has failed to prove that Defendant violated the Rehabilitation Act in terminating him, he is not entitled to damages or any relief. [5]

**D.      Conclusion.**

For the reasons discussed above, Plaintiff has failed to prove a prima facia case of retaliation under the Rehabilitation Act. As such, this Court enters judgment in favor of Defendant, North Idaho College and dismisses Plaintiff's Complaint with prejudice.

DATED this 24th day of March 2023.

CLEMENTS, BROWN & McNICHOLS, P.A.


By    /s/   Bentley G. Stromberg
        BENTLEY G. STROMBERG
        Attorneys for Defendant NIC

---

[5] Plaintiff is claiming damages for loss of income, front and back pay. Under the Rehabilitation Act, Plaintiff is precluded from recovering punitive damages or emotional distress damages. Barnes v. Gorman, 536 U.S. 181, 189 (2002) (no punitive damages under the Rehabilitation Act): Cummings v. Premier Rehab Keller, P.L.L.C., 142 S. Ct. 1562 (2022) (No emotional distress damages under the Rehabilitation Act).

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

James M. Piotrowski
PIOTROWSKI DURAND, PLLC
P.O. Box 2864
1020 W. Main Street, Suite 440
Boise, Idaho 83701
James@idunionlaw.com

/s/
Bentley G. Stromberg

DEFENDANT'S PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW                    - 11 -